■ WOODY ALLEN, Appellant, v MARIA V. FARROW, Also Known as MIA FARROW, Respondent. [626 NYS2d 125] —Order, Supreme Court, New York County (Elliott Wilk, J.), entered November 9, 1994, which denied petitioner's motion for a modification of the court's judgment of July 13, 1993 by authorizing immediate therapeutic visitation with the child Dylan and directing respondent to participate in a program of such visitation and also denied his application for a hearing on the desirability of commencing the therapeutic visitation at this time, unanimously affirmed, without costs or disbursements.

In the underlying special proceeding herein, commenced in August of 1992, petitioner sought to obtain custody of, or procure increased visitation with, the infant children Moses Amadeus Farrow, Dylan O'Sullivan Farrow and his biological son, Satchel Farrow. Following an extended and highly publicized trial, the Supreme Court awarded custody to respondent Mia Farrow and largely denied Allen's requests for visitation. On appeal, this Court affirmed in full (197 AD2d 327 [Carro and Wallach, JJ., dissenting in part], *appeal dismissed* 84 NY2d 864) on the ground that the decision by the Trial Judge was in the best interests of the children. The dissent, significantly, disagreed with the majority only as to Allen's visitation with Satchel, finding that the contacts with his son, lasting no more than two hours, three times a week, under supervision were "unduly restrictive" *(supra,* at 336).

The instant appeal involves petitioner's attempt to secure visitation with Dylan. Specifically, the trial court's judgment denied his request for immediate visitation with her pending the development, within six months of the date of its decision,

by Dylan's treating therapist of a program of supervised therapeutic sessions between Allen and the child "unless such sessions shall interfere with Dylan's individual treatment or be inconsistent with her welfare". Petitioner now urges that the Trial Judge has completely undercut his own previous order of visitation notwithstanding the absence of any change in circumstances since the trial and that he has been totally deprived of his right to visit with his daughter without the imposition of any timetable or structure for reviewing the issue. Moreover, he is critical both of the methodology employed by, and conclusions of, the impartial expert retained by the court to investigate and report on the matter.

Whenever the rights of a child are implicated in a lawsuit, the paramount consideration is the welfare and best interest of that child (Domestic Relations Law §§ 70, 240; *Eschbach v Eschbach*, 56 NY2d 167) and not the asserted rights of the parent *(Weiss v Weiss*, 52 NY2d 170). While petitioner cites various cases in support of the contention that he is entitled to a plenary hearing on the subject of his visitation, none of the cases relied upon by him present a situation that is comparable to the one herein. Indeed, only a handful even refer to applications for modification of existing visitation arrangements, and not one of those matters had a record of the magnitude of the one involved herein.

Allen complains that Justice Wilk has completely undercut his own previous order of visitation notwithstanding the absence of any change in circumstances since the trial and that he has been totally deprived of his right to visit with his daughter without the imposition of any timetable or structure for reviewing the issue. He also urges that there is no assurance whatever that Dylan's long-term interests are being protected by the development of a program aimed at establishing contact with her father. Petitioner attacks the findings of the court-appointed psychiatrist, Dr. Moreau, in part, for failing to acknowledge the damage to Dylan's emotional health that could result from the disallowance of any contact between her and her father despite the recognition accorded in the report to his important role in the first seven years of the child's life. Allen further faults Dr. Moreau for not conveying any recognition of the fact that in the long period in which he has been precluded from seeing his daughter, during which time she has been under the care of Dr. Bird, the girl's alienation from her father has increased rather than declined.

Petitioner, however, ignores the subject that Dr. Moreau deemed as deleterious to the resumption of any contact be-

tween him and Dylan—the continuation of his sexual relationship with Soon-Yi, the child's sister. Certainly, the available record is entirely contrary to Allen's position since both Dr. Bird and Dr. Moreau concur that Dylan remains deeply resistant to visitation with petitioner and that it would not be in the child's best interest to force her to see him. Dr. Moreau, whose selection by the court was unopposed by Allen, clearly had no connection to either party or, indeed, any preconceived views. She undertook an exhaustive investigation into the matter, interviewing everyone who had any relevant information to impart and examining all of the pertinent reports and trial transcripts. The fact that, at the conclusion of Dr. Moreau's evaluation, her opinion did not support the implementation of a program of therapeutic visitation until, at a minimum, Allen had terminated his relationship with Soon-Yi does not render her lacking in impartiality. Rather, she simply did not agree with petitioner's position.

Allen, unhappy with Dr. Moreau's conclusions, demands a hearing so that he can call his own witnesses, who would presumably challenge Dr. Moreau's views. Farrow would probably not be content with relying exclusively upon Dr. Bird and Dr. Moreau and would put her own experts on the stand. It is likely that at least some of these professionals would wish to interview Dylan. In addition, the hearing would, almost certainly, attract public attention. At the conclusion of the proceeding, the Judge would then be left with two sets of divergent views from which he could undoubtedly make a reasonable determination that may not be different than the one that he has already reached. Dylan's emotional stability would, in the meantime, have been further impaired.

The dispute between Allen and Farrow for the custody of, and visitation with, Satchel, Dylan and Moses has already been the subject of a drawn-out and highly publicized trial. The trial court then handed down a ruling that, in relevant part, denied petitioner's request for immediate visitation with Dylan pending the development, within six months of the date of its decision, by the child's treating therapist of a program of supervised therapeutic sessions, "unless such sessions shall interfere with Dylan's individual treatment or be inconsistent with her welfare". This Court affirmed that determination in all respects. Justice Wilk, having first solicited the opinion of Dylan's treating therapist and then having appointed a neutral expert to investigate and report on the matter, found that visitation between Allen and Dylan would not, at the present time, be in the child's best interests. Petitioner was certainly

not deprived of the opportunity to present his views since this matter was discussed at length both at conferences with the Judge and on the record.

Notwithstanding petitioner's insistence that his right to a hearing is no less vital on a motion to modify or enforce an order of visitation as it is on an initial application, there is simply no legal authority for the proposition that a parent is entitled to a full and formal fact-finding whenever he or she may challenge any aspect of a ruling on visitation or custody, particularly where such a hearing will likely be inimical to the best interest of the child. The situation might conceivably have been otherwise if there had been a factual dispute between Dylan's treating therapist and the court-appointed expert, but there was none. Rather, it is petitioner who is endeavoring to create such a disagreement where none exists. Both of the experts who have offered their opinions believe that Dylan is not currently psychologically prepared to have visits with petitioner, who seeks a hearing precisely so that he will be accorded the opportunity to make a record that might be more favorable to his own position.

The trial court, having first solicited the opinion of Dylan's treating therapist and then having designated a neutral professional to investigate and report, found that visitation between Allen and Dylan would not, at the present time, be in the child's best interests, particularly since petitioner remains involved in a sexual relationship with her sister. The record herein, moreover, provides ample support for the court's decision to postpone the start of therapeutic visitation as being contrary to Dylan's emotional health at this time. As the Court asserted in *Corsell v Corsell* (101 AD2d 766, 767), "[i]t is well settled that the question of a child's best interest, the foremost consideration in matters of custody and visitation, is within the discretion of the trial court whose determination will not be set aside unless it lacks a sound and substantial evidentiary basis".

Finally, notwithstanding that a court is, where appropriate, authorized to mandate therapy in connection with a visitation or custody order *(see, Wolfson v Minerbo,* 108 AD2d 682), the Trial Judge did not improvidently exercise his discretion in declining to compel respondent to participate in therapeutic sessions between Allen and Dylan. Concur—Murphy, P. J., Wallach, Asch, Nardelli and Mazzarelli, JJ.